UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRY LEO KRAMER,

        Plaintiff,

    v.

MEDVIN, et al.,

        Defendants.

Case No. 15-cv-03780-HSG

**ORDER GRANTING PENDING SUMMARY JUDGMENT MOTIONS; ADDRESSING OTHER PENDING MOTIONS**

Re: Dkt. Nos. 23, 28, 45

## INTRODUCTION

Plaintiff, a California prisoner currently incarcerated at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging that Dr. Medvin, Sheriff Allman, Captain Pearce, RN Teske, RN Johns, Mendocino County, and California Forensic Medical Group ("CFMG") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he was previously housed at Mendocino County Jail ("MCJ"). Now pending before the Court are summary judgment motions filed by Sheriff Allman, Captain Pearce, and Mendocino County (collectively, the "County Defendants") (Docket No. 23) and by CFMG, RN Teske, RN Johns, and Dr. Medvin (collectively, "Medical Defendants") (Docket No. 45); the County Defendants' Request for Judicial Notice (Docket No. 24); the County Defendants' Request to File Under Seal (Docket No. 28); and the Medical Defendants' Request for Judicial Notice (Docket No. 45-1). Plaintiff has filed oppositions to the summary judgment motions, Docket Nos. 35 and 46, and both the County Defendants and the Medical Defendants have filed replies, Docket Nos. 41 and 47.

For the reasons set forth below, the Court GRANTS the summary judgment motions filed by the County Defendants and by the Medical Defendants; GRANTS the County Defendants'

request to file under seal; GRANTS the County Defendants' Request for Judicial Notice; and DENIES the Medical Defendants' Request for Judicial Notice.

**BACKGROUND**

**A.      Background Facts**

  The following facts are undisputed unless otherwise noted.

  On January 8, 2015, Plaintiff was booked into MCJ.  Docket No. 26-1 at 1.  From January 9, 2015 to January 14, 2015, Plaintiff was placed in a sobering cell and monitored for signs of opiate withdrawal.  Plaintiff showed no signs of withdrawal.  Teske Decl. ¶ 4.

  Plaintiff provides the following account of his time in the sobering cell.  Plaintiff was suffering from withdrawal symptoms during his first month at MCJ, but was not given anything to deal with the symptoms.  MCJ officials deliberately and falsely stated that nothing was wrong with Plaintiff.  Docket No. 35 at 7.  The sobering cell was dirty and the floor around the sink and toilet was covered with feces and urine.  Docket No. 35 at 4.  Plaintiff's socks and shoes were taken from him and he was forced to sleep on the floor of this observation cell without any bedding.  Docket No. 35 at 4.  Plaintiff was fine, but prison staff falsely claimed that Plaintiff was hallucinating and checked his vital signs every few hours.  *Id.*  Officer Sevala informed Plaintiff that Plaintiff appeared to be fine.  *Id.*  Sgt. Johnson told Plaintiff that Plaintiff could not leave the sober cell until he defecated into the toilet and did not flush the feces so that the feces could be checked.  *Id.*  Plaintiff was only provided with a few squares of toilet paper.  *Id.*  Plaintiff eventually defecated in the toilet but was urged to defecate more by Sgt. Johnson.  *Id.*  Plaintiff asked Sgt. Johnson if Sgt. Johnson really thought that Plaintiff was "somehow magically [keeping] a stash of drugs inside [himself]."  *Id.* at 5.

  On February 7, 2015, Nurse Carli gave medication pills to Plaintiff.  Nurse Carlie alleges that Plaintiff took the pills, put them in his mouth but placed two of the pills under his tongue and didn't swallow them.  Docket No. 27-2 at 1.  Nurse Carli ordered Plaintiff to remove the pills from under his tongue and swallow them, and Plaintiff complied.  *Id.*  The medications "cheeked" were

one pill of Risperdal and one pill of Norco.  *Id.*  Plaintiff denies "cheeking" his medication.[1]

On February 13, 2015, Plaintiff informed medical staff that he was wrongly accused of "cheeking."  Plaintiff stated that he has multiple missing teeth and "holes" in his dental work, which makes it difficult to swallow pills.  He stated that he took too many pills one time and one got stuck in an empty tooth socket.  Docket No. 26-2 at 20.  That same day, Plaintiff also reported itching and burning around his anus, and was prescribed acetaminophen.  *Id.*

On February 13, 2015, Plaintiff was administered a health inventory and communicable disease screening.  Docket No. 26-1 at 1–2.  Plaintiff reported daily marijuana use, and use of percocet and methadone.  *Id.*  Plaintiff reported suffering broken ribs one month prior, and that he was being treated with pain medications.  *Id.*  Plaintiff also reported that he had a history of mental health treatment, a history of psychiatric hospitalization, and that he suffered from schizophrenia.  *Id.*  He also reported that he was hearing impaired, suffered from migraines that sometimes caused him to vomit, used inhalers, and is Hepatitis C positive.  *Id.*

On March 2, 2015, Plaintiff was observed talking on the phone with no difficulty in communication.  He was also observed leaning, moving, and raising his arms above his head, all with no difficulty.  Docket No. 22-2 at 18.

According to Plaintiff, on May 27, 2015, Plaintiff suffered a seizure and fell and injured himself because Dr. Medvin denied him seizure medication.  Docket No. 12 ("SAC") at 5. Plaintiff's medical notes make no mention of a seizure on that date, although medical notes in June 2015 report that Plaintiff complained that he suffered from daily seizures that were not witnessed by anyone, and that Plaintiff did not seek medical help immediately following the seizures.  Docket No. 26-2 at 13.  Plaintiff states that Defendants' statements that his seizures are unwitnessed are false and that Plaintiff's two cellmates have witnessed the seizures.  Docket No. 46 at 8.

On June 8, 2015, Plaintiff was examined by a doctor regarding his complaint of shoulder

---

[1] The term "cheeking" refers to a person pretending to swallow a medication but keeping it in their gums or underneath their tongue instead.  Docket No. 27 ("Pearce Decl.") ¶ 6.  One of the main concerns with this practice is that the inmate often then sells the medication to another inmate. Pearce Decl. ¶ 6.

United States District Court
Northern District of California

1    pain.  Teske Decl. ¶ 12.  The doctor did not find any underlying physical problems.  *Id.*

2        On June 18, 2105, Plaintiff told medical staff that he had suffered a seizure that morning.

3    No staff member or inmate could corroborate Plaintiff's account.  Docket No. 26-2 at 13.

4        On June 22, 2015, an x-ray was done on Plaintiff's left shoulder in response to Plaintiff's

5    complaint that he had broken his shoulder during a seizure.  Teske Decl. ¶ 10 and Docket No. 26-4

6    at 1.  The x-ray showed that the shoulder had no fracture or dislocation, and only showed mild

7    degenerative joint disease.  Docket No. 26-4 at 1.

8        On June 28, 2015, Plaintiff was locked down in a camera room for his safety so that

9    medical staff could observe his seizure activity.  Teske Decl. ¶ 13. While Plaintiff was in the

10   observation cell, he did not display any signs of pain and he was observed moving about with

11   ease.  Docket No. 26-2 at 8–10.  Plaintiff was able to do the following things without showing any

12   pain: use the phone; pass the phone from his left hand to his right hand; bend from the waist to

13   pick items up off the floor; lean over from the waist while sitting on the bed; eat his meals; use

14   hands animatedly in conversation; and walk around the cell.  Docket No. 26-2 at 8–10.  There was

15   no seizure activity for 30 days.  Teske Decl. ¶ 13.  Plaintiff was released to the general population

16   on July 20, 2015.  *Id.*

17       Plaintiff makes the following allegations about his time in the observation cell.   Plaintiff

18   states that the cell was brightly lit twenty-four hours a day, with "blatant disregard" for his

19   sensitivity to bright lights and to discourage him from reporting any other seizures.  SAC at 10;

20   Docket No. 46 at 8.

21       On or about July 6, 2015, Plaintiff asked medical staff why his Motrin prescription had

22   been discontinued.  Docket No. 26-2 at 9.  He also complained of pain in his left shoulder from

23   being thrown against a van wall during transport the prior week.  He also demanded meds for his

24   tooth extraction on July 3, 2015.  *Id.*  Plaintiff was prescribed acetaminophen and given over-the-

25   counter muscle balm.  The next day, Plaintiff was observed walking swiftly in the yard with both

26   arms swinging, and bending over, all without limitation.  *Id.*

27       On or about July 13, 2015, an x-ray was done on Plaintiff's left shoulder per Dr. Medvin's

28   orders.  Teske Decl. ¶ 11 and Docket No. 26-5 at 1.  This x-ray also showed that the shoulder was

1  normal and had no fracture.  Teske Decl. ¶ 11 and Docket No 26-5 at 1.  Medical staff determined

2  that an MRI was not indicated since Plaintiff did not exhibit any sign of pain and his x-rays came

3  back as normal.  Teske Decl. ¶ 12.  That same day, Plaintiff complained of headaches and

4  requested "aspirin."  Plaintiff was given 650 mg of over-the-counter acetaminophen.  Docket No.

5  26-2 at 13.  No seizure activity was noted and Plaintiff was observed lying on a bunk reading a

6  newspaper.  *Id.*

7        On July 28, 2015, Plaintiff was seen for dental triage.  Docket No. 26-2 at 8.  Plaintiff

8  complained of pain in his left shoulder originating from the van accident.  *Id.*  Medical staff again

9  observed him moving his body freely without imitation and without pain.  *Id.*  Medical staff

10  prescribed a seven-day course of 600 mg ibuprofen, and over-the-counter muscle balm.  *Id.*

11        On July 29, 2015, Plaintiff was observed for twenty minutes in the dayroom.  Plaintiff sat,

12  stood, swung his arms, pushed, pulled, and shoved without limitation or signs of pain.  Docket No.

13  26-2 at 7.

14        On or about September 8, 2015, Plaintiff refused his Tylenol, stating that he was good.

15  Docket No. 26-2 at 7.

16        On or about September 15, 2015, Plaintiff was observed in the dayroom watching

17  television; sitting comfortably in chairs; moving his back, arms, and shoulders; and laughing and

18  talking with other inmates, all without any signs of discomfort.  Docket No. 26-2 at 6.

19        On or about September 21, 2015, Plaintiff complained that his left shoulder continued to

20  cause him pain and complained of numbness in his fingers.  Plaintiff also demanded an MRI.

21  Plaintiff was prescribed muscle balm.  Docket No. 26-2 at 6.  Because MCJ does not pay for MRIs

22  that are not deemed medically necessary, Captain Pearce informed Plaintiff that if Plaintiff wanted

23  an MRI, Plaintiff would have to pay for the MRI himself.  Pearce Decl. ¶ 13.

24        On October 22, 2015, Plaintiff requested that his meds be re-evaluated by a doctor and

25  complained of anxiety.  Plaintiff was referred to a doctor.  Docket No. 26-2 at 5.

26        On or about December 8, 2015, Plaintiff complained that medical staff passed him by

27  during the morning med pass so he wanted to only take his "regular meds" and not the antibiotics

28  and Tylenol.  Docket No. 26-2 at 5.  Plaintiff was informed that the medications were in liquid

1    form and mixed in the med-cup, so there was no way to separate them.  *Id.*

2        On or about December 9, 2015, Plaintiff twice refused to come to the cell door for his

3    medications.  Docket No. 26-2 at 4.

4        On or about December 17, 2015, Plaintiff complained about pain in his tooth.  Docket No.

5    26-2 at 5.  Plaintiff was placed on the dental list.  Docket No. 26-2 at 5.

6        On or about February 18, 2016, Plaintiff complained that he fell while mopping the floor,

7    causing his back to go out and that he could barely walk.  Docket No. 26-2 at 4.  Plaintiff was

8    unable to provide details about the fall and could not identify any witnesses to his fall.  *Id.*

9    However, Plaintiff was observed that same day eating dinner; watching television; raising his left

10   shoulder to touch his face; leaning forward in his chair; and getting up and out of his chair to walk

11   across his cell.  *Id.*  All actions were completed without slow movements or sudden jerks, and no

12   abnormalities were noted.  *Id.*

13       On or about February 20, 2016, medical staff brought Plaintiff an ice pack and provided

14   instructions on maintaining bed rest.  Docket No. 26-2 at 3.  Medical staff cautioned Plaintiff that

15   he should not be at his desk without back support or pacing around his cell.  Plaintiff responded,

16   "Well that aint going to fucking happen."  *Id.*

17       On or about February 27, 2016, Plaintiff was moving around his cell, pacing, and

18   performing activities without complaining of pain.  Docket No. 26-2 at 2.  Plaintiff was also

19   observed walking to the shower with a steady gait.  *Id.*

20       MCJ medical staff do not give inmates aspirin for pain because it can cause stomach

21   problems and overdose can be extremely dangerous.  Teske Decl. ¶ 17.  Instead, inmates are given

22   ibuprofen or acetaminophen.   Teske Decl. ¶ 17.  Plaintiff initially reported that he was allergic to

23   ibuprofen.  Teske Decl. ¶ 18.  However, when he was given ibuprofen by a dentist following a

24   tooth extraction, he showed no signs of allergy.  Teske Decl. ¶ 18.  RN Teske then reviewed

25   Plaintiff's past medical record and found no documentation of an allergy to ibuprofen.  Teske

26   Decl. ¶ 18.  Plaintiff's claimed allergy to ibuprofen was therefore deleted from his medical chart.

27   Teske Decl. ¶ 18.  Inmates may purchase ibuprofen through the MCJ commissary.  Pearce Decl. ¶

28   8.  Plaintiff made purchases regularly from the commissary, purchasing between approximately

United States District Court
Northern District of California

6

1   $13.00 to $90.00 worth of items each week.  Docket No. 27-2 at 1–68.  The items ranged from

2   foodstuffs to toiletries to paper, stamps and envelopes.  *Id.*  Plaintiff only purchased ibuprofen

3   from the commissary five times: during the week of June 16, 2015; the week of July 14, 2015; the

4   week of July 21, 2015; the week of August 4, 2015; and the week of August 11, 2015.  Docket No.

5   27-2 at 22, 26, 27–30.  Each time, Plaintiff purchased 10 tabs of ibuprofen, which cost $2.40.

6   Docket No. 27-2 at 22, 26, 27–30.

7        Since Plaintiff's initial incarceration at MCJ on January 8, 2015, excluding his time at

8   Napa State Hospital, Plaintiff has been checked upon, had his chart reviewed, evaluated and/or

9   treated by jail medical staff approximately 65 times.  Teske Decl. ¶ 6.  This is in addition to chart

10  review, evaluations, or treatment by mental health staff.  Teske Decl. ¶ 6.  Plaintiff has also been

11  provided with dental care while at MCJ.  Teske Decl. ¶ 7.

12  **B.      Plaintiff's Additional Allegations**

13       Plaintiff makes the following general allegations of mistreatment.  In many instances, he

14  does not identify who specifically mistreated him, instead referring to "they."  Plaintiff also does

15  not specify the dates when he was mistreated.  To the extent that some of these additional

16  allegations may be discussing incidents which Defendants have already addressed, the Court

17  attempts to identify the incident.  Overall, Defendants have not directly addressed or specifically

18  denied the majority of these additional allegations, but they have provided evidence disputing the

19  conclusion Plaintiff draws from these allegations, namely that Defendants were deliberately

20  indifferent to his serious medical needs, in violation of the Eighth Amendment.

21       Plaintiff has been under a doctor's care for over a decade.  Docket No. 46 at 3.  He is

22  ADA-classified, and a high-risk patient, and requires chronic care.  *Id.*  He suffers from chronic

23  migraines, seizures, and several orthopedic issues:  degenerative joint disease, arthritis in most of

24  his major primary mover joints, bone spurring, ligament tear, and tendon tear.  *Id.*  Plaintiff's

25  health issues have been medically documented and proven by CAT scans and MRIs.  *Id.* at 6.

26  Plaintiff's chronic pain condition is visible to the naked eye.  *Id.* at 3.  Defendants allege that

27  Plaintiff has been carefully observed and shows no sign of any pain condition.

28       When Plaintiff arrived at MCJ, Plaintiff was unable to obtain medical care for a month

United States District Court
Northern District of California

because Dr. Medvin was on vacation and MCJ failed to arrange for a backup doctor.  SAC at 10; Docket No. 35 at 7.  Even after Dr. Medvin returned, Plaintiff was unable to obtain medical care in part because Mendocino County and CFMG have a policy that an inmate will not receive medical care unless the inmate pays for the medical care.  SAC at 3 and 10.  Although Defendants do not directly dispute Plaintiff's allegation that Mendocino County and CFMG require payment in order to receive medical services, the record indicates, and Plaintiff does not dispute, that Plaintiff has received medical care while at MCJ and that Plaintiff has not paid for this care.

When Dr. Medvin initially examined Plaintiff, he prescribed Plaintiff pain pills and neurotonin. Docket No. 46 at 5 and 6.  At the first pill distribution, Dr. Medvin falsely accused Plaintiff of "cheeking" meds.[2]  Docket No. 46 at 4.  Dr. Medvin then vindictively discontinued Plaintiff's prescription for pain medication, and instructed the medical staff to deny Plaintiff all medication, including over-the-counter medications.  *Id.*  Dr. Medvin's actions were intended to cause Plaintiff harm, and with the awareness that, without medication, Plaintiff would suffer extreme pain that would affect his daily physical activity and his sleep patterns.  *Id.* at 5. Following the "cheeking" accusation, Dr. Medvin ordered that all medications administered to Plaintiff were to be first crushed.  *Id.* at 9.  Dr. Medvin also stated that he "don't do painkillers." Docket No. 35 at 7.

On June 14, 2016, Plaintiff's knee brace was taken and Plaintiff filed a grievance seeking the return of the brace.  Docket No. 35-1 at 3.  Plaintiff was informed by MCJ staff and Capt. Pearce that his medical records had no indication of him being prescribed a brace.  Docket No. 35-1 at 4.  Plaintiff responded that Dr. Medvin had prescribed the brace.  Docket No. 35-1 at 4.

On July 12, 2016, Plaintiff requested medical services, stating that his filling had fallen out and he needed his tooth fixed.  Docket No. 35-2 at 1.

Plaintiff's undated allegations are as follows.

Dr. Medvin refused to honor an outside doctor's prescription for Excedrin that was

---

[2] Plaintiff appears to be referring to the February 7, 2015 examination by RN Carli when he was accused of "cheeking" medication, except that he alleges that Dr. Medvin was the one who accused him of "cheeking."

United States District Court
Northern District of California

1    intended to treat Plaintiff's migraines.  SAC at 10.  Dr. Medvin told Plaintiff, "Outside doctors

2    have no privileges here."  Docket No. 46 at 6.  Plaintiff has also been denied his inhalers despite

3    having documented chronic obstruction pulmonary disease ("COPD") and was told that the denial

4    was because "people get high on [the inhalers]."  Docket No. 46 at 8.

5            RN Johns refused to provide Plaintiff with pain medication free of charge.  SAC at 8.

6            Plaintiff was told that he could purchase five packs of 200 mgs of Motrin a week with his

7    own funds.  Docket No. 35 at 9.

8            On an unidentified Friday, Plaintiff and his cellmate Will Boyce had tooth extractions.

9    However, only Plaintiff was given his Motrin in a small cup of liquid "so this pill would be extra

10   bitter for only [Plaintiff] in the whole jail to swallow."  Docket No. 35 at 13; Docket No. 46 at 8.

11   When medical staff returned on Monday, they stopped Plaintiff's Motrin order, intentionally

12   causing Plaintiff to suffer great pain.  Docket No. 46 at 9.  Plaintiff's pain was especially severe

13   because the tooth extraction was incomplete and there was a bone protruding from the wound.

14   Docket No. 46 at 9.

15           Plaintiff's left shoulder is severely damaged.  SAC at 5.  This damage is apparent to a

16   layman.  Docket No. 46 at 4.  An MCJ prison official, Nick, saw Plaintiff for a sick call, placed his

17   hand on Plaintiff's left shoulder and "could feel and acknowledge things out of kilter."  Docket

18   No. 46 at 4.  Plaintiff asked Office Delong, who was standing on the other end of the examination

19   room, if Officer Delong could "hear the snap crackle and popping noises coming from Plaintiff's

20   injured left shoulder," and Officer Delong answered in the affirmative.  Docket No. 46 at 4–5.

21   This damage was not visible on x-rays so Dr. Medvin refused to treat Plaintiff's left shoulder.

22   SAC at 5.  An MRI was needed to properly assess the damage but prison officials refused to

23   authorize an MRI.  SAC at 5.  Even after Plaintiff had an MRI, Dr. Medvin refused to treat

24   Plaintiff.  Docket No. 35 at 11.  On July 2, 2016, Dr. Medvin reviewed Plaintiff's MRI but still

25   refused to prescribe any medication.  Docket No. 35-1 at 1.

26           Plaintiff's left shoulder sustained further injury when he fell while being transported in a

27   county transport van and Officer Dyche slammed on the brakes.  SAC at 6; Docket No. 46 at 3.

28   Plaintiff sought medical care for this injury, but RN Teske denied him access to a doctor, and Dr.

United States District Court
Northern District of California

9

1  Medvin refused to see Plaintiff.  SAC at 6 and 9.

2       Plaintiff attempted to obtain medical care numerous times but was told by prison official

3  Nick "sorry but I can't make the doctor see you."  Docket No. 46 at 5 and 8.

4       Defendants abused Plaintiff until he "literally went insane."  Docket No. 35 at 5.

5  Defendants "pushed write-ups on [Plaintiff]."  Docket No. 35 at 5.

6       In response to his request for dental treatment, RN Teske falsely noted on Plaintiff's

7  request slip that Plaintiff was scheduled to see a dentist, when Plaintiff was not seen by a dentist

8  for weeks.  Docket No. 35 at 11.

9       When Plaintiff was housed at San Quentin State Prison and Napa County Jail, he was

10  provided with both a back brace and his seizure medications.  Docket No. 35 at 15.

DISCUSSION

11

12  **A.    Standard of Review**

13       Summary judgment is proper where the pleadings, discovery and affidavits show there is

14  "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

15  law."  *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the

16  case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

17  fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

18  nonmoving party.  *See id.*

19       A court shall grant summary judgment "against a party who fails to make a showing

20  sufficient to establish the existence of an element essential to that party's case, and on which that

21  party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

22  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

23  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial

24  burden of identifying those portions of the record that demonstrate the absence of a genuine issue

25  of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings

26  and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

27  file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324

28  (citing Fed. R. Civ. P. 56(e)).

United States District Court
Northern District of California

1   For purposes of summary judgment, the court must view the evidence in the light most

2   favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

3   evidence produced by the nonmoving party, the court must assume the truth of the evidence

4   submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

5   The court's function on a summary judgment motion is not to make credibility determinations or

6   weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v.*

7   *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8   **B.      Legal Standard**

9   Deliberate indifference to serious medical needs violates the Eighth Amendment's

10   proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104

11   (1976). A "serious" medical need exists if the failure to treat a prisoner's condition could result in

12   further significant injury or the "unnecessary and wanton infliction of pain." *See McGuckin v.*

13   *Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies,*

14   *Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (citing *Estelle*, 429 U.S. at 104). A

15   determination of "deliberate indifference" involves an examination of two elements:  the

16   seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

17   *See id.*

18   A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

19   risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*

20   *v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from

21   which the inference could be drawn that a substantial risk of serious harm exists," but he "must

22   also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not,

23   then the official has not violated the Eighth Amendment, matter how severe the risk. *Gibson v.*

24   *Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be

25   established, therefore, there must be a purposeful act or failure to act on the part of the defendant

26   and resulting harm. *See McGuckin*, 974 F.2d at 1060.

27   Deliberate indifference may be manifested in two ways: (1) a denial, delay or intentional

28   interference with medical treatment, or (2) the provision of medical care in an unconstitutional

United States District Court
Northern District of California

11

1    manner by prison physicians.  *McGuckin*, 974 F.2d at 1060.  In either case, however, the

2    indifference to medical needs must be substantial.  Inadequate treatment due to negligence,

3    inadvertence, medical malpractice or differences in judgment between an inmate and medical

4    personnel does not rise to the level of a constitutional violation.  *Sanchez v. Vild*, 891 F.2d 240,

5    242 (9th Cir. 1989); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

6    **C.      Summary Judgment Motions**

7           The County Defendants argue that they are entitled to summary judgment because

8    Plaintiff's action is barred by res judicata.  Docket No. 23.  And both the County Defendants and

9    the Medical Defendants argue that they did not show deliberate indifference to Plaintiff because

10   they provided him with appropriate medical care.  Docket Nos. 23 and 45.[3]  Plaintiff has not

11   addressed the res judicata claim, and he argues that both the County Defendants and the Medical

12   Defendants were deliberately indifferent to his serious medical needs because they completely

13   failed to provide him with care and tortured him.

14          **1.      Res Judicata**

15          The County Defendants argue that this action is barred by res judicata because Plaintiff has

16   already litigated the same claims in *In re Kramer*, Case No. SCUK-CRCR 15-26787 in

17   Mendocino County Superior Court.[4]

18   _____

19   [3] The Court DENIES the Medical Defendants' "Request for Judicial Notice" pursuant to "FRCP
     210(a)(b)" of the Declaration of RN Teske filed at Docket No. 26.  Docket No. 45-1.  The Court
20   assumes that the Medical Defendants are referring to Rule 201(b) of the Federal Rules of
     Evidence, which allows a court to judicially notice facts that are not subject to reasonable dispute
21   in certain circumstances.  The Court does not need to take "judicial notice" of a declaration filed in
     this action, but considers RN Teske's declaration along with all other evidence in the record in
22   deciding both summary judgment motions.

23   [4] The Court GRANTS the County Defendants' Request for Judicial Notice of certain documents
     filed in *In re Kramer*, Case No. SCUK-CRCR 15-26787.  Docket No. 24.  Pursuant to Federal
24   Rule of Evidence 201(b), a court may judicially notice a fact that is not subject to reasonable
     dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can
25   be accurately and readily determined from sources whose accuracy cannot reasonably be
     questioned.  Fed. R. Evid. 201(b).  Federal courts may "take notice of proceedings in other courts,
26   both within and without the federal judicial system, if those proceedings have a direct relation to
     the matters at issue."  *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d
27   244, 248 (9th Cir. 1992).  Although the Court "may take judicial notice of the existence of
     unrelated court documents. . . it will not take judicial notice of such documents for the truth of the
28   matter asserted therein."  *In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D.
     Cal. 2010) (in considering defendant's motion to dismiss, court took judicial notice of existence of

United States District Court
Northern District of California

1    The related doctrines of res judicata and collateral estoppel limit the ability of litigants to

2    re-litigate matters.  Under the doctrine of res judicata (also known as the claim preclusion

3    doctrine), "a final judgment on the merits of an action precludes the parties or their privies from

4    relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel

5    [also known as the issue preclusion doctrine], once a court has decided an issue of fact or law

6    necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

7    different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94

8    (1980).  Res judicata bars not only every claim that was raised in state court but also bars the

9    assertion of every legal theory or ground for recovery that might have been raised in support of the

10   granting of the desired relief.  The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738,

11   requires a federal court to give to a state court judgment the same preclusive effect as would be

12   given that judgment under the law of the state in which the judgment was rendered.  *See Migra v.*

13   *Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  "[R]easoned denials of California

14   habeas petitions" have claim-preclusive effect.  *Gonzales*, 739 F.3d at 1231.  Such denials also

15   have issue-preclusive effect.  "[B]ecause of the nature of a state habeas proceeding, a decision

16   actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983

17   action if the state habeas court afforded a full and fair opportunity for the issue to be heard and

18

19   unrelated court documents, but declined to take judicial notice of truth of matters set forth in these
20   unrelated court documents); *see also McMunigal v. Bloch*, No. C 10–02765 SI, 2010 WL
     5399219, *2 n. 1 (N.D. Cal. Dec. 23, 2010) (granting judicial notice of documents filed in another
21   lawsuit for purposes of noticing existence of lawsuit, claims made in lawsuit, and that various
     documents were filed, but not for truth of the matters asserted therein).  Accordingly, the Court
22   GRANTS Defendants' request for judicial notice of the existence of the following pleadings filed
     in *In re Kramer*, Case No. SCUK-CRCR 15-26787, but not the truth of the matters asserted in the
23   documents:
     1.  Petition for Writ of Habeas Corpus (filed Jun. 19, 2015)
24   2.  Request for Informal Response to Petition for Writ of Habeas Corpus (filed Jul. 8, 2105)
     3.  Mendocino County Sheriff's Department's Informal Response to Petition for Writ of Habeas
25   Corpus (filed Jul. 24, 2015)
     4.  Declaration of Captain Timothy Pearce in support of Mendocino County Sheriff's
26   Department's Informal Response (filed Jul. 24, 2015)
     5.  Declaration of Claire Teske, R.N. in support of Mendocino County Sheriff's Department's
27   Informal Response (filed Jul. 24, 2015)
     6. Order To Show Cause and Order Appointing Counsel (filed Sept. 8, 2015)
28   7.  Superior Court Docket and Minutes dated Nov. 16, 2015
     8.  Order After Hearing On Petition For Writ Of Habeas Corpus (filed Mar. 17, 2016)

United States District Court
Northern District of California

1   determined under federal standards." *Silverton v. Dept. of the Treasury*, 644 F.2d 1341, 1347 (9th

2   Cir. 1981).

3          Here, the Court agrees that res judicata bars the Eighth Amendment claims against the

4   County Defendants.  The Court finds that the state court judgment is final; the parties in both

5   actions are in privity; the claims raised in both actions are the same; and the state habeas court

6   afforded a full and fair opportunity for Plaintiff's issues to be heard.

7          Under California law, a judgment becomes final for res judicata purposes once it is free

8   from direct attack, e.g., when direct review concludes or the time to appeal lapses.  *See generally*

9   *Busick v. Workmen's Comp. Appeals Board*, 7 Cal. 3d 967, 974 (Cal. 1972).  The Mendocino

10  County Superior Court issued an order denying the writ of habeas corpus in *In re Kramer* on

11  March 17, 2016.  There is nothing in the record indicating that Plaintiff appealed the order or that

12  the state court decision is not final.  *See generally* Cal. R. Ct. 8.104(a) (requiring judgment to be

13  appealed within 60 to 180 days after entry of judgment).  In addition, Plaintiff does not dispute

14  that a final judgment was reached in *In re Kramer*.

15         Under California law, for the purposes of res judicata or collateral estoppel, privity

16         refers to a mutual or successive relationship to the same rights of property, or to such an
           identification in interest of one person with another as to represent the same legal rights
17         and, more recently, to a relationship between the party to be estopped and the unsuccessful
           party in the prior litigation which is 'sufficiently close' so as to justify application of the
18         doctrine of collateral estoppel. . . . . A party is adequately represented for purposes of the
           privity rule if his or her interests are so similar to a party's interest that the latter was the
19         former's virtual representative in the earlier action.

20  *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 71 Cal. Rptr. 2d 77, 87 (1998)

21  (internal citations and quotation marks omitted).  Plaintiff's state habeas petition named MCJ as

22  the respondent, and the Mendocino County Sheriff's Office appeared on behalf of MCJ.  MCJ is

23  run by the Mendocino County Sheriff's Office.  In the instant action, the County Defendants are

24  MCJ Sheriff Allman, MCJ Captain Pearce, and Mendocino County.  The Mendocino County

25  Sheriff's Department is an office/department of Mendocino County.  The Court finds that the

26  relationship between MCJ Sheriff Allman, MCJ Captain Pearce, Mendocino County, and the

27  Mendocino County Sheriff's Office is sufficiently close to establish privity.  In addition, the

28  interests of the Mendocino County Sheriff's Office in the state habeas action and the interests of

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1  MCJ Sheriff Allman, MCJ Captain Pearce, and Mendocino County in the instant action are so

2  similar that Mendocino County and its employees, MCJ Sheriff Allman and MCJ Captain Pearce,

3  can be considered virtual representatives of the Mendocino County Sheriff's Office for the

4  purposes of establishing privity.

5      Under California law, a final judgment in state court "'precludes further proceedings if

6  they are based on the same cause of action.'" *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir.

7  2009) (quoting *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004)). Under California's

8  "primary rights theory," a "cause of action is (1) a primary right possessed by the plaintiff, (2) a

9  corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant

10  which consists in a breach of such primary right and duty." *Brodheim*, 584 F.3d at 1268 (internal

11  quotation marks and citation omitted). If this cause of action test is satisfied, then the same

12  primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery,

13  seeks different forms of relief, and/or adds new facts supporting recovery. *Id.*; *see also Gonzales*

14  *v. Cal. Dept. of Corr.*, 739 F.3d 1226, 1232 (9th Cir. 2014) ("California's doctrine of claim

15  preclusion does not require identity of relief sought"). In the instant action, the primary right

16  possessed by Plaintiff is his Eighth Amendment right to be free from cruel and unusual

17  punishment — a right which, in this context, is expressed as a right to have defendants not be

18  deliberately indifferent to his serious medical needs by improperly denying him medical treatment

19  and medication for his various medical conditions. In the state habeas petition, Plaintiff claimed

20  that Mendocino County Sheriff's Office was denying him necessary medical care and pain

21  medication in violation of Title 15, and the First and Eighth Amendments. Docket No. 24-1 at 3.

22  In the instant action, the primary duty of prison officials is not to inflict cruel and unusual

23  punishment — a right which, in this context, is expressed as a duty not to be deliberately

24  indifferent to an inmate's serious medical needs. In the state habeas petition, Plaintiff alleged that

25  prison officials had a duty to provide him with necessary medical care and pain medication.

26  Docket No. 24-1 at 1–8. Finally, in the instant action, the alleged harm was the suffering of

27  unnecessary and extreme pain; the denial of necessary medical care; an untreated injured shoulder;

28  and a seizure that could have been prevented by medication. In the state habeas petition, the

1   alleged harm was suffering a seizure that could have been prevented by medication; the denial of

2   necessary medication; the suffering of extreme pain; scarring on his face; an untreated injured

3   shoulder; and contracting HPV.  Docket No. 24-1 at 1–8.  The same primary right of Plaintiff,

4   corresponding primary duty of prison officials, and harm done by prison officials was alleged in

5   both actions.  The two actions involve the same cause of action, even though the state habeas

6   petition also alleges additional harm caused by the constitutional violations.

7        Finally, the record indicates that Plaintiff had an opportunity to fully and fairly litigate his

8   Eighth Amendment claims in his state court habeas proceeding.  After Plaintiff filed the petition in

9   the Mendocino County Superior Court, an informal response was filed by the Mendocino County

10  Sheriff's Office.  Docket Nos. 24-3, 24-4 and 24-5.  Plaintiff provided a response.  Docket No. 24-

11  8 at 2.  The Mendocino County Superior Court reviewed the informal response and Petitioner's

12  response, and denied in part Plaintiff's Petition and issued an Order to Show Cause as to part of

13  the Petition.  Docket No. 24-6.  The Mendocino County Superior Court also appointed counsel to

14  represent Plaintiff.  Docket No. 24-6.   After examining the petition and hearing evidence, the

15  Mendocino County Superior Court denied Plaintiff's petition.

16       Accordingly, the Court finds that Plaintiff's Eighth Amendment claims against the County

17  Defendants are precluded by the doctrine of res judicata.

18       **2.        Deliberate Indifference**

19       Both the County Defendants and the Medical Defendants argue that they have not shown

20  deliberate indifference to Plaintiff's serious medical needs because they have met Plaintiff's

21  medical needs by seeing Plaintiff on numerous occasions; by prescribing medications and

22  treatments for all ailments that could be detected; and by providing appropriate medical treatment.

23  Docket No. 23 at 14–17.  After carefully reviewing the record, and making all reasonable

24  inferences in Plaintiff's favor, the Court finds that there is no genuine dispute that the County

25  Defendants and the Medical Defendants consistently provided Plaintiff with medical care, and

26  were not deliberately indifferent to Plaintiff's serious medical needs in violation of the Eight

27  Amendment.

28       Before addressing Plaintiff's allegations, the Court addresses two threshold issues with

United States District Court
Northern District of California

16

Plaintiff's oppositions and his SAC.[5]

The first issue is that the majority of Plaintiff's allegations in his SAC and his oppositions refer generally to "they" and do not identify which specific defendants committed the allegedly unconstitutional acts.  While the Court has presumed Plaintiff refers to all Defendants when using the pronoun "they," this poses the following problem.  Because the basis for liability is different depending on the defendant's level and type of involvement in the constitutional deprivation, evidence sufficient to create a genuine issue of material fact as to one defendant's liability may be insufficient to create a genuine issue of material fact as to another defendant's liability.  With respect to the individual defendants, Plaintiff must demonstrate that each individual defendant personally participated in the alleged constitutional deprivation.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  But a defendant who serves in a supervisory capacity and did not personally participate in the alleged constitutional deprivation may be liable under § 1983 if the supervisory defendant either failed to train or supervise personnel properly, or if the constitutional deprivation resulted from official policy or custom, or if the supervisory defendant knew of the alleged misconduct but failed to act to prevent future misconduct.  *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir. 1984).  With respect to Mendocino County, a municipality, to prove § 1983 liability, Plaintiff must "demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality and not the actions of the

---

[5] The Court treats both Plaintiff's verified second amended complaint (Docket No. 12) and his "complaint response" filed in opposition to the Medical Defendants' summary judgment motion (Docket No. 46) as opposing affidavits under Rule 56, to the extent that these two pleadings set forth admissible facts that are based on personal knowledge.  *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987) (considering plaintiff's complaint to be verified where it was based on personal knowledge and set forth specific facts admissible in evidence, and considering complaint in opposition to summary judgment motion).  The Court has also considered the allegations made in Plaintiff's letter response (Docket No. 35) to the County Defendants' summary judgment motion to the extent that the letter response has set out facts that Plaintiff will be able to prove through admissible evidence.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (at summary judgment stage, courts "do not focus on the admissibility of the evidence's form . . .. [but] instead focus on the admissibility of its contents.").

United States District Court
Northern District of California

1    employees of the municipality." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

2            The second issue is that many of Plaintiff's allegations are vague and provide no context,

3    and therefore do not establish the absence or presence of a genuine dispute of material fact as

4    required by Rule 56. *See* Fed. R. Civ. P. 56(c)(1)(A)  ("A party asserting that a fact cannot be or is

5    genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the

6    record, including depositions, documents, electronically stored information, affidavits or

7    declarations, stipulations (including those made for purposes of the motion only), admissions,

8    interrogatory answers, or other materials . . .").  For example, in response to Defendants' evidence

9    showing that during Plaintiff's time at MCJ, Plaintiff has been checked upon, had his chart

10   reviewed, evaluated, or treated by jail medical staff approximately 65 times, Teske Decl. ¶ 6,

11   Plaintiff responds that he attempted to obtain medical care numerous times but was told by prison

12   official Nick, "sorry but I can't make the doctor see you," Docket No. 46 at 5 and 8.  However,

13   Plaintiff does not specify the dates and time he tried to obtain medical care, or why the medical

14   care was needed.  Similarly, Plaintiff alleges that Defendants abused him until he "literally went

15   insane," and that Defendants "pushed write-ups on him."  Docket No. 35 at 5.  Plaintiff does not

16   specify what the abuse consisted of, when it happened, which defendant abused him, and what the

17   write-ups referred to.   "[M]ere allegation and speculation do not create a factual dispute for

18   purposes of summary judgment."  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82

19   (9th Cir. 1996).

20           The Court now turns to examining Plaintiff's allegations, which fall into three categories.

21           Plaintiff's first category of allegations is that he was denied proper treatment for his

22   injured left shoulder; and that he was denied his pain and seizure medications.  Plaintiff

23   specifically references being denied an MRI for his shoulder; denied Excedrin; denied his inhaler;

24   and denied a knee brace.

25           With respect to Plaintiff's shoulder, the record contradicts Plaintiff's claims that he was

26   denied medically acceptable treatment for his injured left shoulder.  Plaintiff's left shoulder was

27   examined by MCJ medical staff.  Teske Decl. ¶ 12.  When the physical examination did not

28   indicate any damage to Plaintiff's shoulder, an x-ray was taken. Teske Decl. ¶¶ 10, 12 and Docket

United States District Court
Northern District of California

18

1  No. 26-4.  Three doctors —Dr. Medvin; the doctor reviewing the x-ray; and Dr. Levin, the

2  Medical Defendants' expert witness — all concluded that the x-ray showed no signs of fracture.[6]

3  Captain Pearce stated that Plaintiff was denied an MRI because the x-ray showed no fracture.  To

4  the extent that Plaintiff disagrees with the medical treatment provided, this constitutes a difference

5  of medical opinion as to which course of treatment to pursue and is insufficient, as a matter of law,

6  to establish deliberate indifference.  *See Franklin*, 662 F.2d at 1344 ("A difference of opinion

7  between a prisoner-patient and prison medical authorities regarding treatment does not give rise to

8  a § 1983 claim.").  The fact that he received an MRI at another prison facility also does not

9  establish deliberate indifference because a showing of nothing more than a difference of medical

10  opinion as to the need to pursue one course of treatment over another is also insufficient, as a

11  matter of law, to establish deliberate indifference.  *See Toguchi v. Chung*, 391 F.3d 1051, 1058,

12  1059–60 (9th Cir. 2004).

13  　　　　With respect to Plaintiff's allegations that he was denied pain medication, seizure

14  medication, and Excedrin, the record indicates that Plaintiff was provided various medications

15  throughout his time at MCJ, such as Risperdal, trazadone, doxepin, Neurontin, and ibuprofen.  *See*

16  *generally* Docket No. 26-3 (listing medications prescribed to Plaintiff).  It is unclear whether any

17  of these medicines were prescribed for management of pain or for preventing seizures.  The record

18  also shows that there were time periods that Plaintiff was not provided with some of the above

19  listed medications.  For example, in February and March 2016, Plaintiff was only prescribed

20  trazadone and no other medications.  Docket No. 26-4 at 3–4.  But, on summary judgment,

21  Plaintiff must cite to particular parts of materials in the record to show that there is a genuine

22  dispute of fact regarding whether he was denied medication in violation of the Eighth

23  Amendment, or Plaintiff must show that the materials cited by Defendants do not establish the

24  absence of a genuine dispute.  Fed. R. Civ. P. 56(c).  Plaintiff has done neither.  He does not

25  specify which medication was needed to treat his seizures or his pain.  He does not specify when

26

27  _____

28  [6] Plaintiff claims that he eventually had an MRI of his shoulder while at Napa State Hospital.
Docket No. 35 at 11; Docket No. 35-1 at 1.  However, Plaintiff does not specify what the MRI
showed or if it conflicted with the x-ray results.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    these medications were denied him, or specify which of the denials constituted deliberate

2    indifference.  Nor does Plaintiff's allegation that he suffered a seizure due to being deprived of his

3    seizure medication establish deliberate indifference.  Assuming arguendo that Plaintiff was

4    deprived of seizure medication, Plaintiff has not cited to anything in the record that would indicate

5    that either the County Defendants or the Medical Defendants were aware that Plaintiff was at

6    substantial risk of serious harm if he were not provided with seizure medication.  The County

7    Defendants and the Medical Defendants regularly monitored Plaintiff and did not observe any

8    seizures.  Plaintiff claims that two cellmates witnessed one of the seizures, but Plaintiff's claim is

9    vague and unsubstantiated.  Plaintiff does not provide the name of the cellmates, much less

10   declarations from these cellmates; nor does he specify when this seizure happened.  Although the

11   Court is required to view the evidence in the light most favorable to the non-moving party,

12   Plaintiff's "conclusory, self-serving affidavit[s], lacking detailed facts and any supporting

13   evidence, [are] insufficient to create a genuine issue of material fact" in light of the uncontroverted

14   record.  *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007) (citing *Fed. Trade*

15   *Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended); *see*

16   *also Nelson*, 83 F.3d at 1081–82 ("mere allegation and speculation do not create a factual dispute

17   for purposes of summary judgment"); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

18   Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to

19   raise genuine issues of fact and defeat summary judgment."); *Sanchez v. City of Los Angeles*, No.

20   CV 07–5132 GHK (JC), 2011 WL 6951822, *5 (C.D. Cal. Oct. 31, 2011) ("Conclusory and

21   speculative affidavits that fail to set forth specific facts are insufficient to raise a genuine dispute

22   of material fact.").

23         With respect to Plaintiff's claim that he was denied Excedrin, the record indicates that

24   Plaintiff was prescribed ibuprofen while at MCJ and was able to purchase it from the prison

25   commissary.  Plaintiff's preference for Excedrin instead of ibuprofen is a difference of opinion

26   between a prisoner-patient and prison medical authorities regarding treatment that does not give

27   rise to a § 1983 claim.  *Franklin*, 662 F.2d at 1344.

28         Defendants do not address Plaintiff's claim that he was denied his inhaler and a knee brace,

20

but Plaintiff again fails to cite to anything in the record that would indicate that either the County Defendants or the Medical Defendants were aware that Plaintiff was at substantial risk of serious harm if he were not provided with his inhaler and a brace, and deliberately chose not to provide inhaler and a brace.  Even viewing the facts in the light most favorable to Plaintiff, the Court finds that there is no genuine dispute as to whether the medical treatment provided Plaintiff violated the Eighth Amendment.

Plaintiff's second category of allegations is that he was completely denied medical care and medication.  Specifically, he alleges that he could not obtain medical care during his first month at MCJ; that Dr. Medvin refused to see him about his injured left shoulder; that Dr. Medvin and other MCJ staff refused to provide him with medication; and that he attempted to obtain medical numerous times but was told that prison staff couldn't force the doctor to see him.  Again, the record contradicts Plaintiff's allegations.  With respect to his allegation that he did not obtain medical care upon arriving at MCJ, the record indicates that upon arriving at MCJ, Plaintiff was treated for opiate withdrawal by being placed in a sobering cell; and that MCJ correctional and medical staff checked his vital signs every couple hours while in the sobering cell.[7]  Teske Decl. ¶ 4.  With respect to Plaintiff's allegations that he was denied medications and could not obtain medications without paying for them himself, the record indicates that Plaintiff was regularly

---

[7] In his opposition, Plaintiff alleges that the sobering cell was dirty, that the floor was covered in feces and urine, that he was forced to sleep on the floor without bedding, and that he was not allowed to leave until he defecated and his feces were checked.  Docket No. 35 at 4.  These allegations do not state a claim for deliberate indifference to serious medical needs because the alleged mistreatment did not deny Plaintiff medical treatment.  Rather, the alleged mistreatment occurred in the context of providing Plaintiff medical treatment, specifically monitoring his opiate withdrawal.  Generally speaking, allegations regarding conditions of confinement may state a claim for cruel and unusual punishment in violation of the Eighth Amendment.  However, Plaintiff did not raise such a claim in his second amended complaint and, more importantly, these allegations fail to state a cognizable Eighth Amendment claim for cruel and unusual punishment.  Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries, such as the injuries complained of here.  *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 9–10 (8th Amendment excludes from constitutional recognition *de minimis* uses of force); *Anderson v. County of Kern*, 45 F.3d 1310, 1314–15 (9th Cir. 1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without mattress for one night insufficient to state Eighth Amendment violation and no amendment can alter that deficiency), *judgment vacated on other grounds*, 493 U.S. 801 (1989).

United States District Court
Northern District of California

provided with medications, starting as early as January 21, 2015, and that Plaintiff continued to be provided with various medications throughout his stay at MCJ. Docket No. 26-3. Plaintiff himself acknowledges having received medications, reporting that Dr. Medvin initially prescribed him pain pills and neurotonin, and that he received medication in liquid form following his tooth extraction. Docket No. 35 at 13; Docket No. 46 at 8–9. Plaintiff's medication administration record also indicates that Plaintiff regularly received medication while at MCJ. Plaintiff does not dispute the accuracy of his medication administration record, but simply states that Dr. Medvin instructed staff to deny Plaintiff all medication after Plaintiff was found "cheeking." Finally, Defendants' refusal to provide Plaintiff with ibuprofen free of charge fails to establish that Defendants were deliberately indifferent to his serious medical needs since the record indicates, and Plaintiff does not dispute, that Plaintiff had access to ibuprofen, in that he could, and did, purchase ibuprofen from the commissary. Docket No. 35 at 9 and Docket No. 27-2 at 22 26, and 27–30.

Finally, with respect to Plaintiff's allegation that he sought medical treatment multiple times without success, the record indicates — and Plaintiff does not dispute — that during his stay at MCJ, Plaintiff was checked on, had his chart reviewed, was evaluated, or was treated by MCJ medical staff approximately 65 times, which does not include examinations or treatments by mental health staff. Teske Decl. ¶ 6 and Ex. B. In response, Plaintiff states that he attempted to obtain medical care numerous times but was told by prison officer Nick "sorry but I can't make the doctor see you." Docket No. 46 at 5 and 8. Plaintiff does not identify when he asked for the medical care, what he sought medical treatment for, or how long he was denied medical care. Although the Court is required to view the evidence in the light most favorable to Plaintiff, the vague evidence proffered by Plaintiff is insufficient to create a genuine issue of fact and defeat summary judgment on this record. *Anderson*, 477 U.S. at 249.

Plaintiff's third category of allegations is that MCJ has policies that led to the allegedly unconstitutional violations. Specifically, he alleges that MCJ does not provide a backup doctor when Dr. Medvin is unavailable; and that both MCJ and CFMG have a policy that an inmate will not receive medical care unless he pays for it. Neither the County Defendants nor the Medical

22

1    Defendants directly address these allegations.  Assuming arguendo that there is a *de facto* policy

2    of not providing a backup doctor, there is no indication that this policy resulted in inadequate

3    medical care that violated the Eighth Amendment.  There is nothing in the record, outside of

4    Plaintiff's conclusory affidavits, that the prison medical staff was unable to meet the inmates'

5    medical needs.  Plaintiff's allegation that there is a policy of requiring payment to access medical

6    care is not supported by the record.  Plaintiff's medical record indicates that he received medical

7    treatment while at MCJ, and there is nothing in the record that indicates that Plaintiff paid for this

8    treatment. Accordingly, the Court finds that there is no genuine dispute as to whether policies or

9    customs promulgated by MCJ or CFMG violated Plaintiff's Eighth Amendment rights.  *Anderson*,

10   477 U.S. at 252 (mere existence of a scintilla of evidence in support of plaintiff's position

11   insufficient; there must be evidence on which jury could reasonably find for plaintiff).

12          After reviewing the record carefully, the Court finds that Plaintiff's Eighth Amendment

13   claims against the County Defendants are barred by res judicata, and that Defendants have

14   demonstrated that there is no triable issue of fact as to whether they were deliberately indifferent

15   to Plaintiff's serious medical needs.

16          **D.      Motion to Seal**

17          The County Defendants have filed an unopposed administrative motion to file two

18   documents under seal:  PC 1372 Court Report ("1372 Report") and Addendum to PC 1370 Court

19   Letter, Narrative Discharge Summary ("Addendum") regarding Plaintiff from Napa State

20   Hospital, Mendocino County Superior Court, Case No. SCUK-CRCR-15-80299.  *See* Docket No.

21   28.  The documents certified that Plaintiff was mentally competent to stand trial, and as a result,

22   discussed Plaintiff's medical condition and treatment.  The County Defendants claim that the

23   disclosure of the 1372 Report and Addendum is prohibited under California Welfare and

24   Institutions Code § 5328.  *Id.* at 2.

25          Courts generally apply a "compelling reasons" standard when considering motions to seal

26   documents.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677-78 (9th Cir. 2010).  "This standard

27   derives from the common law right 'to inspect and copy public records and documents, including

28   judicial records and documents.'"  *Id.* (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d

                                                   23

1172, 1178 (9th Cir. 2006)).   "[A] strong presumption in favor of access is the starting point."

*Kamakana*, 447 F.3d at 1178 (quotation omitted).   To overcome this strong presumption, the

moving party must "articulate compelling reasons supported by specific factual findings that

outweigh the general history of access and the public policies favoring disclosure, such as the

public interest in understanding the judicial process." *Id.* at 1178-79 (quotation omitted).   "In

general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify

sealing court records exist when such court files might have become a vehicle for improper

purposes, such as the use of records to gratify private spite, promote public scandal, circulate

libelous statements, or release trade secrets." *Id.* at 1179 (quotation omitted).   The court must

"balance the competing interests of the public and the party who seeks to keep certain judicial

records secret."   After considering these interests, if the court decides to seal certain judicial

records, it must base its decision on a compelling reason and articulate the factual basis for its

ruling, without relying on hypothesis or conjecture." *Id.* (quotation omitted).

Civil Local Rule 79-5 supplements the "compelling reasons" standard.   The party seeking

to file under seal must "establish[ ] that the document, or portions thereof, are privileged,

protectable as a trade secret or otherwise entitled to protection under the law. . . .   The request

must be narrowly tailored to seek sealing only of sealable material . . . ." Civ. L.R. 79-5(b).

Finally, records attached to motions that are only "tangentially related to the merits of a

case" are not subject to the strong presumption of access. *Ctr. for Auto Safety v. Chrysler Grp.,*

*LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).   Accordingly, parties moving to seal such records must

meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure.  *Id.* at

1097.   The "good cause" standard requires a "particularized showing" that "specific prejudice or

harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors*

*Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) (quotation omitted); *see also* Fed. R. Civ. P. 26(c).

The Court applies the "compelling reasons" standard here, because the 1372 Report and

Addendum, as health records, are more than "tangentially related to the merits" of Plaintiff's

deliberate indifference claim at the summary judgment stage.

Subsection (f) of California Welfare and Institutions Code § 5328 provides that disclosure

United States District Court
Northern District of California

1  of confidential information may be made "[t]o the courts, as necessary to the administration of

2  justice." Cal. Wel. & Inst. § 5328(f). The Court must, therefore, weigh the presumption of access

3  against Plaintiff's right to privacy. *Cf. Enwere v. Terman Associates, L.P.,* 2008 WL 5146617, at

4  *2 (N.D. Cal. 2008) (ordering disclosure of plaintiff's mental health records where information

5  was reasonably necessary to test plaintiff's claims of mental and emotional distress); *see also Soto*

6  *v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Resolution of a privacy objection or

7  request for a protective order requires a balancing of the need for the information sought against

8  the privacy right asserted.").

9        Here, Plaintiff claims that Defendants are providing him with inadequate medical care.

10  But in granting Defendants' motions for summary judgment, the Court did not rely on either the

11  1372 Report or the Addendum. The 1372 Report focuses on Plaintiff's mental health, which is not

12  directly at issue in this action. And the Addendum only summarily describes Plaintiff's condition

13  at the time of his discharge and includes brief and unrelated recommendations for his follow-up

14  care. They do not specifically confirm or refute Plaintiff's claim that he received inadequate care

15  for his shoulder injury and seizures.

16        Balancing Plaintiff's privacy interests in information about his medical condition against

17  the public's right of access to documents the Court did not rely upon in reaching its decision, the

18  Court finds that compelling reasons are present here, and GRANTS the County Defendants'

19  motion to file the 1372 Report and the Addendum under seal. Both the 1372 Report and the

20  Addendum shall remain under seal until the conclusion of this case and any appellate proceedings.

21  If counsel for the County Defendants does not request that the documents be returned following

22  the conclusion of this case and any appellate proceedings, the documents will be destroyed in

23  conformance with the normal records destruction policy of the United States Courts.

24                                          **CONCLUSION**

25        For the foregoing reasons, the Court GRANTS the County Defendants' summary judgment

26  motion (Docket No. 23), and GRANTS the Medical Defendants' summary judgment motion

27  (Docket No. 45). The Court also GRANTS the County Defendants' Request to File Plaintiff's

28  Medical Records Under Seal (Docket No. 28), and seals the documents filed as exhibits to Docket

1   No. 28.  The Court also GRANTS the County Defendants' Request for Judicial Notice (Docket

2   No. 24); and DENIES the Medical Defendants' Request for Judicial Notice (Docket No. 45-1).

3          The Clerk shall enter judgment for Defendants and close the file.  This order terminates

4   Docket Nos. 23, 28, and 45.

5          **IT IS SO ORDERED.**

6   Dated:  3/31/2017

7

8                                                 HAYWOOD S. GILLIAM, JR.
                                                   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California